## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy Case No. 13 B 43900 |
| | ) | |
| SAM CALLAS, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Honorable Janet S. Baer |
| ———————————————— | ) | |
| | ) | |
| MICHAEL K. DESMOND, not individually | ) | |
| but as chapter 7 trustee for the bankruptcy | ) | |
| estate of SAM CALLAS, | ) | Adversary Case No. 15 A 00140 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| AMERICAN EXPRESS CENTURION | ) | |
| BANK, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

## MEMORANDUM OPINION

Michael K. Desmond (the "Trustee"), as chapter 7 trustee for the bankruptcy estate of

Sam Callas (the "Debtor"), filed a six-count adversary complaint against American Express

Centurion Bank, Inc. ("American Express"), seeking to avoid and recover from American

Express allegedly preferential or fraudulent transfers made by Katina Callas, the Debtor's non-

filing spouse ("Katina"), to American Express pursuant to 11 U.S.C. §§ 547(b), 548(a)(1), and

550(a) of the Bankruptcy Code.[1]  The Trustee also seeks disallowance of American Express's

claims against the bankruptcy estate under §§ 502(d) and (j) until American Express pays to the

---

[1] Unless otherwise noted, all statutory and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532, and the Federal Rules of Bankruptcy Procedure.

estate the amount of the avoidable transfers for which it is purportedly liable.  This matter is now

before the Court on American Express's motion for partial summary judgment on Counts II and

V, the recovery claims of the complaint.  For the reasons set forth below, the Court finds that

there are no genuine issues of material fact and American Express is entitled to judgment as a

matter of law on the recovery claims.  As such, American Express's motion will be granted, and

judgment will be entered on Counts II and V in favor of American Express.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and Internal

Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.

This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (F), (H), and (O).

## BACKGROUND

The material facts in this case are few and undisputed.  Those facts, gleaned from the

docket and the relevant pleadings, are as follows.

The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code

on November 12, 2013 (the "Petition Date").  About a year later, on November 4, 2014, the

Debtor's case was converted to a case under chapter 7.  The following day, the United States

Trustee appointed Michael K. Desmond as chapter 7 trustee of the Debtor's bankruptcy estate.

On October 23, 2013, prior to the Petition Date, the Debtor's non-filing spouse Katina

opened a checking account ("Katina's Account") at Heartland Bank & Trust Company

("Heartland Bank").  (Pl.'s L.R. 7056-2 Resp. ¶ 2.)  That account was solely owned by Katina,

and no one else was authorized to make withdrawals from the account.  (*Id.* ¶¶ 3 & 4.)

On October 24, 2013, one day after Katina opened the account, the Debtor received

2

$266,000 from the Department of Veterans Affairs (the "VA Funds") in connection with a build-out for a commercial property that he owned in Evanston, Illinois. (*Id.* ¶¶ 1(a)-(d) & 6.) The VA Funds were electronically deposited into a checking account owned jointly by the Debtor and Katina at Heartland Bank (the "Joint Account"). (*Id.* ¶ 1(e).) That same day, the Debtor transferred $265,000 of the VA Funds from the Joint Account to Katina's Account. (*Id.* ¶¶ 1(f) & 8.)

On October 25, 2013, two more transfers were made.[2] First, Katina transferred $39,800 from her account to American Express to pay down antecedent credit card debt owed by the Debtor to American Express. (*Id.* ¶¶ 9-11 & Ex. 2 at 4.) Although the balance on the Debtor's American Express credit card account had not exceeded $7,000 between January 1, 2013 and July 13, 2013 (Def.'s Reply to Pl.'s Stmt. of Additional Facts ¶ 32),[3] he had incurred new charges of $78,187.17 on the account between July 14, 2013 and August 13, 2013 (*id.* ¶ 33).[4] After the receipt and posting of the payment made by Katina on October 25, 2013, the remaining balance due to American Express on the Debtor's credit card account was $29,937.75.[5] (Pl.'s L.R. 7056-

---

[2] Although the parties do not dispute that the two other transfers were made on October 25, 2013, the books and records of American Express reflect that the second of the two subsequent transfers (to pay down the balance of the Debtor's credit card) was received and posted on October 24, 2013. (Pl.'s L.R. 7056-2 Resp., Ex. 2 at 4.)

[3] In his additional facts in opposition to American Express's motion, the Trustee alleges that between January 1, 2013 and July 13, 2013, the balance on the Debtor's American Express account had never been above $6,000. (Pl.'s Stmt. of Additional Facts ¶ 32.) American Express disputes that fact, noting that the Debtor incurred charges of $6,650.04 between May 14, 2013 and June 12, 2013. (Def.'s Reply to Pl.'s Stmt. of Additional Facts ¶ 32.) Although the amount is contested, it is inconsequential, and, thus, the disputed fact is immaterial.

[4] On August 17, 2013 and September 30, 2013, transfers from the Debtor to American Express of $10,000 and $69,762.75, respectively, to pay down the credit card debt on his account were declined by Heartland Bank. (Def.'s Reply to Pl.'s Stmt. of Additional Facts, Ex. D at ¶¶ 34 & 35.)

[5] On May 20, 2015, American Express filed a proof of claim in the Debtor's bankruptcy case in the amount of $29,837.75, the remaining balance due on the Debtor's American Express credit card account after the transfer from Katina's Account and a credit adjustment of $100. (Pl.'s L.R. 7056-2 Resp., Ex. 2.)

2 Resp., Ex 2 at 3.) Katina also transferred $1,546.27 from her account to American Express to pay antecedent credit card debt that she owed to American Express. (*Id.* ¶¶ 16-18.)

On May 12, 2015, the Trustee filed the instant six-count adversary complaint, seeking to avoid and recover from American Express the purported preferential or fraudulent transfers made by Katina to American Express pursuant to §§ 547(b), 548(a)(1), and 550(a).[6] In Counts I and II of the complaint, the Trustee seeks avoidance of the transfers as preferential under § 547(b) and recovery of those transfers pursuant to § 550(a), respectively. In the alternative, in Counts III and IV, the Trustee seeks avoidance of the transfers as actually and constructively fraudulent under § 548(a)(1)(A) and (B), respectively; in Count V, he seeks recovery of those transfers, again pursuant to § 550(a). Finally, in Count VI, the Trustee asks the Court to disallow any and all claims of American Express against the bankruptcy estate under §§ 502(d) and (j) until American Express pays to the estate the aggregate amount of all avoidable transfers for which it is allegedly liable.[7]

On March 29, 2016, American Express filed the instant motion for summary judgment.

---

[6] The Trustee filed his initial three-count complaint on March 10, 2015. (Adv. No. 15-00140, Docket No. 1.) That complaint did not include claims that the transfers at issue were fraudulent under § 548(a)(1). Also on March 10, 2015, the Trustee filed a four-count complaint against Katina, seeking avoidance and recovery of transfers as fraudulent under §§ 548(a)(1) and 550(a), respectively, and disallowance of claims under §§ 502(d) and (j). (Adv. No. 15-00141, Docket No. 1.) Many of the allegations in the adversary case against Katina mirror those in the complaint at bar. The Trustee filed a motion for summary judgment in the adversary against Katina on May 4, 2016. (*Id.*, Docket No. 20.) That motion has been continued, pending resolution of this adversary proceeding.

[7] After filing the complaint, the Trustee explained that he now seeks to avoid and recover from American Express only the transfer of $39,800 made to pay down the Debtor's American Express credit card debt, not the transfer of $1,546.27 made to pay Katina's credit card debt. (Pl.'s Resp. at 2). The Court notes that both parties identify the transfers sought to be avoided and recovered as those made by Katina to American Express, defined in the complaint as the "AmEx Transfers." In the context of § 550, however, a transfer that has been avoided and of which recovery is sought is the first transfer, the one made by the debtor to the initial transferee, in this case by the Debtor to Katina, as discussed *infra. See Brandt v. Horseshoe Hammond, LLC (Equip. Acquisition Res., Inc.)*, 803 F.3d 835, 840-41 (7th Cir. 2015). For purposes of simplicity and clarity, the Court will refer to this transfer as simply the "Transfer."

4

Subsequent to that filing, counsel for American Express explained that he is not challenging the

avoidability of the Transfer under either § 547(b) or § 548(a)(1). (Oral Arg. Tr. 3:24-4:18, July

6, 2016.)  According to counsel, even if the Transfer is avoidable, it may not be recovered from

American Express as an immediate or subsequent transferee of Katina. (*Id.*)  Accordingly,

American Express seeks only partial summary judgment on the recovery claims in Counts II and

V of the complaint. (*Id.*)

The Court heard oral argument on July 6, 2016 and then took the matter under

advisement.  After a review of all of the relevant pleadings, exhibits, arguments, and applicable

case law, the Court is now ready to rule.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and the

movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (made applicable to

adversary proceedings by Fed. R. Bankr. P. 7056).  The primary purpose of the summary

judgment procedure is to avoid unnecessary trials where no genuine issues of material fact are in

dispute. *See Trautvetter v. Quick*, 916 F.2d 1140, 1147 (7th Cir. 1990); *Farries v.

Stanadyne/Chi. Div.*, 832 F.2d 374, 378 (7th Cir. 1987) (quoting *Wainwright Bank & Trust Co. v.

Railroadmens Fed. Sav. & Loan Ass'n of Indianapolis*, 806 F.2d 146, 149 (7th Cir. 1986)).

Thus, on a motion for summary judgment, the Court must decide, based on the evidence, whether

there is a material disputed fact that requires a trial. *Kodish v. Oakbrook Terrace Fire Prot.

Dist.*, 604 F.3d 490, 507 (7th Cir. 2010); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).  A

genuine issue of material fact exists when "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986). Where the material facts are not in dispute, the only issue is whether the moving party is entitled to judgment as a matter of law. *ANR Advance Transp. Co. v. Int'l Bhd. of Teamsters, Local 710*, 153 F.3d 774, 777 (7th Cir. 1998).

The party seeking summary judgment always bears the burden of establishing that there are no genuine issues of material fact in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether the movant has met its burden, the Court must view all reasonable inferences drawn from the underlying facts in a light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 248; *Smeigh v. Johns Manville, Inc.*, 643 F.3d 554, 560 (7th Cir. 2011). Once the moving party satisfies its initial burden of production, the party opposing the motion may not rest on the mere allegations or denials in his pleadings; rather, his response must set forth specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001).

When a defendant is the party moving for summary judgment, the plaintiff must submit evidence to satisfy each element of his claim on which he has the burden of proof. *Celotex*, 477 U.S. at 322. When a defendant is the party moving for summary judgment on an affirmative defense, however, it bears the burden of proof and thus must provide evidence demonstrating each element of the defense. *CLC Creditors' Grantor Trust v. Howard Sav. Bank (In re Commercial Loan Corp.)*, 396 B.R. 730, 741 (Bankr. N.D. Ill. 2008) (citing *Zenith Elec. Corp. v. Panalpina, Inc.*, 68 F.3d 197, 201 (7th Cir. 1995)). Failing that, the motion will be denied. *Id.*

A careful review of the parties' statements and responses filed in connection with American Express's motion for summary judgment reveals that there are no genuine

material facts in dispute.[8] Thus, the only question to be considered is whether American

Express is entitled to partial summary judgment as a matter of law.

## DISCUSSION

In Counts II and V of the complaint, the Trustee seeks to recover from American Express

the value of the Transfer pursuant to § 550(a). That statute sets forth the parties from whom

avoided transfers can be recovered, *Fisher v. Hamilton (In re Teknek, LLC)*, 343 B.R. 850, 880

(Bankr. N.D. Ill. 2006), and provides, in pertinent part, as follows:

> (a) Except as otherwise provided in this section, to the extent that a transfer is
> avoided under section . . . 547 . . . [or] 548 . . . of this title, the trustee may
> recover, for the benefit of the estate, the property transferred, or, if the
> court so orders, the value of such property, from–
>
> (1) the initial transferee of such transfer or the entity for whose benefit
> such transfer was made; or
>
> (2) any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

"Section 550(a) stands as a recovery statute only and not as a primary avoidance basis for

an action, as it will . . . survive [only] when coupled with the transfer avoidance sections of the

Code." *Brown v. Caruso (In re Kogos)*, Bankr. Nos. 10 B 05807, 10 B 00764, Adv. Nos. 10 A

01317, 10 A 01318, 2010 WL 4928913, at *6 (Bankr. N.D. Ill. Nov. 30, 2010) (internal

quotation omitted). Although a court ordinarily must first determine whether a transfer is

avoidable before that transfer can be recovered under § 550(a), *id.,* American Express does not

challenge the avoidability of the Transfer in this matter. Rather, American Express argues that

even if the Transfer is avoidable, the Trustee cannot recover from American Express. Thus, the

---

[8] The statements in dispute in the parties' pleadings are either legal conclusions or facts that are immaterial.

7

sole issue here is recovery under § 550.

Pursuant to § 550(a), a trustee may recover from the "initial transferee," the entity for whose benefit the transfer was made, or subsequent transferees. 11 U.S.C. § 550(a). Although the trustee can recover from any combination of these entities, he is entitled to only a single satisfaction. 11 U.S.C. § 550(d); *see, e.g., Kismet Acquisition, LLC v. Icenhower (In re Icenhower)*, Bankr. No. 03-11155-A7, Adv. Nos. 06-90369-A7, 04-90392-A7, 2008 WL 7953444, at *19 (Bankr. S.D. Cal. June 2, 2008); *see also* 5 *Collier on Bankruptcy* ¶ 550.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (explaining that the trustee is generally prevented by § 550(d) from "obtaining a windfall for the estate by recovering from multiple transferees so that the total recovery is in excess of the value of the property transferred").

The Code does not define "transferee." The Seventh Circuit has explained, however, that a "transferee" has "dominion over the money or other asset, the right to put the money to one's own purposes." *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988). The "initial transferee" is the first entity to have such a dominion or right. *Barber v. Colchester State Bank (In re KZK Livestock, Inc.)*, Nos. 91-82986, 95-8015, 1998 WL 34064931, at *2 (Bankr. C.D. Ill. Oct. 14, 1998). An "immediate or mediate transferee," in turn, is "one who takes in a later transfer down the chain of title or possession." *Grochocinski v. Knippen (In re Knippen)*, 355 B.R. 710, 728 (Bankr. N.D. Ill. 2006) (internal quotation omitted), *aff'd*, No. 07 C 1697, 2007 WL 1498906 (N.D. Ill. May 18, 2007). The parties here do not dispute that Katina was the initial transferee and American Express the immediate or mediate transferee.[9]

---

[9] In Count II of the complaint, the Trustee alleges that Katina lacked dominion or control over the funds paid to American Express via the Transfer, that she was a "mere conduit" with respect to those funds, and that American Express was thus the initial transferee from whom the Trustee is entitled to recover. (Compl. ¶¶ 38, 39,

Although it concedes that it was a subsequent transferee, American Express asserts an

affirmative defense under § 550(b)(1) to the Trustee's recovery claims. *See Commercial Loan

Corp.*, 396 B.R. at 743 (identifying § 550(b)(1) as an affirmative defense). That provision allows

subsequent transferees to avoid liability for avoided transfers and provides as follows:

> (b)   The trustee may not recover under section (a)(2) of this section from–
>
>> (1)   a transferee that takes for value, including satisfaction or securing
>> of a present or antecedent debt, in good faith, and without
>> knowledge of the voidability of the transfer avoided[.]

11 U.S.C. § 550(b)(1). Thus, the Trustee cannot recover the Transfer from American Express if

American Express took the Transfer (1) for value, (2) in good faith, and (3) without knowledge

of the voidability of the Transfer. *Id.* American Express bears the burden of proving each

element of its defense. *See Commercial Loan Corp.*, 396 B.R. at 743; *Knippen*, 355 B.R. at 728.

### 1. For Value

Turning to the first element, the undisputed facts establish that American Express

received the Transfer for value. Section 550(b)(1) expressly includes as part of "value"

"satisfaction . . . of a[n] . . . antecedent debt." 11 U.S.C. § 550(b)(1). Here, it is uncontested that

the Debtor owed an antecedent debt to American Express and that the Transfer reduced that debt.

Specifically, the evidence demonstrates–and the parties do not dispute–that Katina transferred

$39,800 to American Express on October 25, 2013 to pay down antecedent credit card debt owed

to American Express by the Debtor, leaving a remaining balance due of $29,937.75. Given that

---

42, 43.) In Counts III, IV, and V, however, the Trustee alleges that Katina was the initial transferee and American
Express the immediate or mediate transferee of Katina. (Compl. ¶¶ 47, 55, 61, 63, 66.) Subsequently, at oral
argument, the Trustee clarified his position, stating: "[W]e're not disputing that Katina Callas was the initial
transferee. I want to make that perfectly clear that American Express was the subsequent transferee." (Oral Arg. Tr.
15:7-11, July 6, 2016; *see also id.*, 15:20-25.) Accordingly, the Court need not address American Express's
arguments that Katina was the initial transferee and not a "mere conduit."

satisfaction of an "antecedent debt" specifically fulfills the requirement of § 550(b)(1), American Express has met the "for value" element of the defense.

Notwithstanding the foregoing, the Trustee claims that American Express has not, in fact, satisfied the "for value" element, and he extends two arguments in support of that contention. First, the Trustee argues that value must be given to the *transferor*–in this matter, Katina–for purposes of § 550(b). According to the Trustee, the "for value" element has not been met here because American Express did not present evidence that it gave any value to Katina in exchange for the Transfer. The Trustee's argument is without merit.

The Seventh Circuit has explained in the seminal case *Bonded Financial Services, Inc. v. European American Bank* that § 550(b)(1) simply says "value"; it "does not say 'value to the debtor,'" value to the transferor, or value to any other specific entity. 838 F.2d at 897. "A natural reading" of the statute "looks to what the transferee gave up rather than what the debtor [or the transferor] received." *Id.* In this matter, American Express accepted the Transfer for value by reducing the antecedent debt owed to it by the Debtor by $39,800. By reducing the debt, American Express "gave up" its right to collect that amount from the Debtor. Accordingly, American Express took the Transfer for value for purposes of § 550(b)(1).

Focusing on the language "satisfaction . . . of . . . a[n] antecedent debt" in the statute, the Trustee also argues that American Express has not established the "for value" element because the Transfer did not pay the full balance owed on the Debtor's American Express credit card account. In support of this claim, the Trustee relies on dictionary definitions of the word "satisfaction," noting that one legal dictionary defines the term as "'[t]he fulfillment of an obligation; esp., the payment in full of a debt.'" (Pl.'s Resp. at 6 (quoting *Black's Law*

10

*Dictionary*)).

The Code does not define "satisfaction," nor does a survey of the case law reveal a definition of the word in the context of § 550(b)(1). Nevertheless, in evaluating the "for value" element of the statute, the Seventh Circuit has found that partial satisfaction of an antecedent debt is sufficient for purposes of meeting the element under § 550(b)(1). *Bonded*, 838 F.2d at 896-97 (noting that a payment "satisfied" $200,000 of a debt of $655,000 in credit that had been previously extended by subsequent transferee bank and that, thus, the bank "took for value"); *see also Cage v. GDH Int'l, Inc. (In re Great Gulfcan Energy Tex., Inc.)*, 488 B.R. 898, 914 (Bankr. S.D. Tex. 2013); *Erie Marine Enters., Inc. v. Nationsbank, N.A. (In re Erie Marine Enters., Inc.)*, 216 B.R. 529, 538 (Bankr. W.D. Pa. 1998); *Genova v. Gottlieb (In re Orange Cnty. Sanitation, Inc.)*, 221 B.R. 323, 328 (Bankr. S.D.N.Y. 1997).

The Trustee's "value to the transferor" and "partial satisfaction" arguments run counter to governing case law in this circuit. As a result, and based on the undisputed evidence discussed above, the Court concludes that American Express received the Transfer "for value" for purposes of § 550(b)(1).

## 2.      In Good Faith and Without Knowledge of the Voidability of the Transfer

The other question is whether American Express took the Transfer "in good faith" and "without knowledge" of voidability. These are separate statutory requirements. In conducting their § 550(b)(1) analyses, however, courts frequently collapse the two elements into one, because both "hinge on knowledge–what the transferee knew about the transfer." *Commercial Loan Corp.*, 396 B.R. at 745; *see also Brandt v. Horseshoe Hammond, LLC (Equip. Acquisition Res., Inc.)*, 803 F.3d 835, 840-43 (7th Cir. 2015); *Bonded*, 838 F.2d at 897; *Daley v. Chang (In re*

*Joy Recovery Tech. Corp.)*, 286 B.R. 54, 81 (Bankr. N.D. Ill. 2002); 5 *Collier on Bankruptcy* ¶

550.03[3] (explaining that the knowledge element "was included as surplusage to illustrate a

transferee that could not be in good faith").

       The Code does not define "good faith." The legislative history of § 550(b)(1), however,

explains that the term "good faith" is intended "'to prevent a transferee from whom the trustee

could recover from transfer[r]ing the recoverable property to an innocent transferee, and

receiving a [re]transfer from him, that is, 'washing' the transaction through an innocent third

party.'" *Equip. Acquisition Res.*, 803 F.3d at 842 (quoting H.R. Rep. No. 95-595, at 376 (1977);

S. Rep. No. 95-989, at 90 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5876). "In order for the

transferee to be excepted from liability . . . , he himself must be a good faith transferee." *Id.*

Courts have found a lack of good faith when the circumstances establish that a transferee knew

or should have known of a debtor's poor financial condition. *Joy Recovery*, 286 B.R. at 80. A

transferee also acts without good faith if it knew or should have known that it "was not trading

normally but that on the contrary, the purpose of the trade, so far as the debtor [and transferor]

w[ere] concerned, was the defrauding of [their] creditors." 5 *Collier on Bankruptcy* ¶ 550.03[2]

(internal quotation omitted). In *Bonded*, the court noted that a transferee "may lack good faith if

[it] possessed enough knowledge of the events to induce a reasonable person to investigate."

*Bonded*, 838 F.2d at 897-98.

       As for knowledge of voidability, the *Bonded* Court found that § 550(b)(1) "codified an

imputed knowledge or inquiry notice standard." *Equip. Acquisition Res.*, 803 F.3d at 840 (citing

*Bonded*, 838 F.2d at 898). Thus, a transferee may have knowledge of voidability even without a

"complete understanding of the facts and receipt of a lawyer's opinion that . . . a transfer is

voidable." *Bonded*, 838 F.2d at 898. Inquiry notice must be sufficient, however, to permit the

transferee "to have gained actual knowledge by inquiring. If a reasonable inquiry would not have

led to actual knowledge of voidability, a court cannot impute knowledge." *Equip. Acquisition*

*Res.*, 803 F.3d at 840. The issue here, then, is whether American Express had "inquiry notice" of

the voidability of the Transfer from the Debtor to Katina. *See id.* at 840-41 (explaining that "'the

transfer avoided' refers only to the first transfer from the debtor to [the] initial transferee").

The Trustee argues that American Express was on inquiry notice that the Transfer in this

matter was voidable. In support of that contention, the Trustee points to various "red flags," of

which he claims American Express was aware, warning signs that should have both alerted

American Express of the voidability of the Transfer and induced it to investigate. According to

the Trustee, those "red flags" included unusual charging activity, bounced payments, payment of

the Debtor's obligations by Katina, and notations on American Express's internal records, all of

which concerned the Debtor's ability to pay his own debts.

Specifically, the Trustee contends that American Express knew or should have known of

the Debtor's precarious financial condition because in July and August 2013 he incurred almost

$80,000 on his American Express credit card account, an amount considerably more than his

prior balances in the first half of that year. The Trustee also argues that American Express was

aware of the Debtor's financial difficulties because two payments that he made to American

Express prior to the Transfer were both returned for insufficient funds. Additionally, citing to a

notation in the records produced by American Express, the Trustee claims that American Express

knew that Katina would be making a payment on the Debtor's credit card account. According to

the Trustee, such a payment by a third party is "[i]rregular [in] nature" and would have led a

13

reasonable party to inquire further. Finally, the Trustee contends that there is a factual dispute

over whether the Debtor's American Express account was cancelled and placed under

investigation. Such a dispute, the Trustee says, raises a genuine issue of material fact as to

whether American Express knew or should have known of the Debtor's poor financial condition

and, therefore, precludes the entry of summary judgment in this matter.

The Court is not convinced that these alleged "red flags" are sufficient to have imposed a

duty on American Express to investigate the Transfer from the Debtor to Katina. Although its

internal records reflect that two payments from the Debtor had been declined by his bank and that

his wife would be making a payment on his credit card account on his behalf, American Express

had no reason either to suspect that the money received through the Transfer was obtained

improperly or to conduct an investigation into the circumstances of the transaction. Section

550(b) "leaves with the initial transferee the burden of inquiry and the risk if the conveyance is

fraudulent" or otherwise improper. *Bonded*, 838 F.2d at 892; *see also Daley v. Chang (In re Joy

Recovery Tech. Corp.)*, 257 B.R. 253, 271-72 (Bankr. N.D. Ill. 2001). "The initial transferee is

the best monitor; subsequent transferees usually do not know where the assets came from and

would be ineffectual monitors if they did." *Bonded*, 838 F.2d at 892-93. Unlike a bank, credit

card company, or other financial institution, Katina had extensive, interrelated dealings with the

Debtor and was, thus, in "the best position to monitor" the Transfer. *See Goldstein v. Klein (In

re Klein)*, Bankr. Nos. 86 B 19937, 88 A 357, 1991 WL 242169, at *17 (Bankr. N.D. Ill. June 21,

1991). This is particularly true because the circumstances suggest that Katina was actually aware

of the Debtor's intent to hinder and delay payments to some of his creditors. *See id.* In contrast,

there is no suggestion that American Express, as a subsequent transferee, had any knowledge of

14

the Debtor's attempt to place funds out of the reach of creditors or that it was aware that Katina's

Account had been established for that purpose.

Placing the burden of inquiry on Katina, the initial transferee, is especially appropriate

here because American Express is a credit card company that processes a vast number of routine

transactions on a daily basis. The cost of imposing a general duty to inquire on such a

commercial entity would be staggering, particularly under circumstances like those in this matter.

*See Bonded*, 838 F.2d at 893 (discussing those costs when the transferees are financial

intermediaries). Additionally, courts have found that the "likelihood of bad faith . . . is lessened"

when the entity involved "is a *commercial* enterprise handling transactions in a *routine* fashion."

*Goldman v. Capital City Mortg. Corp. (In re Nieves)*, 648 F.3d 232, 239 n.5 (4th Cir. 2011)

(internal quotation omitted). There is no hint that American Express's handling of the Transfer

in this matter differed in any way from its typical handling of credit card transactions.

The Trustee's claim that American Express knew that Katina would be making a payment

on the Debtor's credit card account is also insufficient to conclude that American Express had a

duty to inquire further. True, American Express had received payments on the Debtor's credit

card account from the Debtor himself prior to the Transfer, and there was no evidence that it had

ever previously taken payments on that account from Katina or any other third party as a regular

business practice. Here, however, American Express was advised that Katina would be making a

payment on the Debtor's account. American Express had had prior dealings with Katina, albeit

with respect to her own credit card account, and, after being notified, was expecting a payment

from her on behalf of the Debtor. Thus, when the payment was received via the Transfer,

American Express would have had no reason either to suspect that the money was obtained

15

improperly or to conduct an investigation into the circumstances of the transaction. Katina is the

Debtor's wife; thus, the fact that the money came from her account would not have been

particularly significant to American Express. In any event, § 550(b)(1) and *Bonded* make clear

that knowledge that Katina's account was the source of the Transfer does not support a finding

that American Express had knowledge for purposes of the affirmative defense. *See Equip.*

*Acquisition Res.*, 803 F.3d at 842. To hold otherwise would place on American Express a nearly

impossible burden of inquiring into the source of funds for countless transfers received from

third parties.

Finally, the Trustee's contention that there is a factual dispute about whether American

Express cancelled the Debtor's credit card account and actually conducted an investigation is

simply misplaced. According to the supplemental affidavit submitted by Sean Hamilton

("Hamilton"), the assistant custodian of records for American Express, the Debtor incurred a

charge on his credit card account of $30,000 on July 17, 2013. (Supp. Aff. ¶¶ 2 & 7a.) Hamilton

asserts that American Express accepted the charge and, thereafter, made payments to the

respective vendors consistent with the terms of agreements between American Express and those

vendors. (*Id.* ¶ 7b.) On October 8, 2013, Hamilton states, the Debtor filed a dispute with

American Express in connection with the charge, and American Express initiated a billing

inquiry. (*Id.* ¶¶ 7c & d.) As a result of the dispute, the Debtor did not have to make any

payments to American Express for the charge while the billing inquiry was pending. (*Id.* ¶ 7e.)

Hamilton avows that the dispute was subsequently concluded in the ordinary course of business.

(*Id.* ¶ 7f.) Based on Hamilton's sworn statements, the Court finds that the account closure and

investigation are irrelevant to the matter at bar and thus do not raise genuine issues of material

16

fact as to whether American Express can satisfy the "good faith" and "without knowledge" elements.[10]

In sum, the uncontested facts establish that American Express did not have enough knowledge of the events in connection with the Transfer to permit the Court to conclude that American Express had a duty to investigate further. Even if American Express had investigated, however, it is unlikely that it would have discovered any alleged scheme to transfer the VA Funds out of the reach of certain creditors of the Debtor. At the time of the Transfer, the Debtor had not yet filed for bankruptcy relief and neither his creditors nor anyone else appeared to be aware of the purported fraud. American Express had no window into the financial relationship between the Debtor and Katina and knew nothing of their monetary dealings. Thus, assuming that American Express had been on inquiry notice that something was amiss, a reasonable inquiry would have undoubtably revealed nothing suggesting that the Transfer was voidable. As the Seventh Circuit explained in *Bonded*, "when a subsequent transferee's reasonable inquiry 'would have turned up nothing pertinent to voidability, the [transferee's] failure to make it does

---

[10] The Trustee argues that the statements made in the initial affidavit submitted by Hamilton are legal conclusions and that the affidavit is self-serving and cannot support an affirmative defense. Citing to *Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 925 (7th Cir. 2004), the Trustee contends that "self-serving statements in affidavits *without factual support in the record* carry no weight on summary judgment." Hamilton's supplemental affidavit provides more factual detail, particularly about the account closing and billing inquiry. It also clarifies that the books and records included as exhibits to the pleadings reflect that American Express had no knowledge of the voidability of the Transfer. The Seventh Circuit has acknowledged that affidavits and other written statements "by their nature are self-serving." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013). The Seventh Circuit has found, however, that a court may consider self-serving statements made under oath if they are based on personal knowledge and set forth specific facts. *Id.* (stating that "the term 'self[-]serving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment"); *Payne*, 337 F.3d at 773 (explaining, in the context of summary judgment, that a self-serving affidavit is an acceptable way for a party to present evidence of disputed material facts). Thus, Hamilton's supplemental affidavit has evidentiary relevance and is sufficient to support American Express's motion for partial summary judgment.

not permit a court to attribute to it the necessary knowledge.'" *Equip. Acquisition Res.*, 803 F.3d at 842 (quoting *Bonded*, 838 F.2d at 898).

Based on all of the circumstances and undisputed facts in this matter, American Express had no reason to think that it was not "trading normally" with the Debtor and Katina or that the Transfer was part of a scheme on their part to defraud their creditors. American Express was not a transferee "washing" a transaction through an innocent third party–it *was* the innocent third party. Accordingly, the Court concludes that American Express received the Transfer in good faith and without knowledge of its voidability.

## CONCLUSION

For the foregoing reasons, the Court finds that the undisputed facts demonstrate that American Express took for value, in good faith, and without knowledge of the voidability of the Transfer in this matter. Accordingly, American Express has established a valid affirmative defense to liability under § 550(b)(1). As such, American Express's motion will be granted, and judgment will be entered on Counts II and V in favor of American Express. A separate order will be entered consistent with this Memorandum Opinion.

Dated: **September 27, 2016**                    ENTERED:

Janet S. Baer
United States Bankruptcy Judge